

**OFFICE OF THE ATTORNEY GENERAL OF TEXAS**

**AUSTIN**

GERALD C. MANN
ATTORNEY GENERAL

Honorable John C. Marburger
County Attorney
Fayette County
LaGrange, Texas

Dear Sir:

Opinion No. 0-2978
Re: Liability of County for cost
of removing electric poles a-
long state highway.

This is in reply to the request contained in your
letter of December 10, 1940, supplemented by your letters of
December 16, 1940, and January 14, 1941 for the opinion of
this Department as to the responsibility of Fayette County
for the cost of removing certain electric power poles along
and off of a designated state highway in the course of widening
and relocating portions of such highway.

As we understand it, the electric power poles and
lines are the property of two electric companies. One is in-
corporated under the general law (which we shall call the gen-
eral company) and the other is an electric cooperative incorpor-
ated under the provision of Article 1528b, Vernon's Annotated
Civil Statutes (which we shall call the cooperative). Both
companies maintain poles which we shall designate "A" poles
along the right-of-way of the highway as it is now located.
They also maintain poles which we shall designate "B" poles
over and upon certain private property by virtue of easements
granted them by the fee owners of such property. The new high-
way is to go across these easements.

Preliminaries to the widening and relocation of the
highways are being undertaken by the commissioners' court acting
under Article 6674n of Vernon's Annotated Civil Statutes, as the
agent of the State Highway Commission; and in acquiring the nec-
essary road bed for the new and wider highway, it will be nec-
essary that both "A" and "B" poles be removed and placed in new
positions.

COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL

Honorable John C. Marburger, page 2

It is the contention of Fayette County that the cost of removing and relocating both "A" and "B" poles so as not to interfere with the new highway should be borne by the electric companies in question. This contention is supported by the terms of franchises granted by the commissioners' court to each of the respective companies.

The one to the General company grants it the right to:

"* * * erect, construct, maintain, extend, renew and operate a system of works, poles, wires, cables, underground conduits and all necessary and proper apparatus and appertenances within the limits of the county of Fayette * * * and for said purposes to enter upon or below and use the highways, public roads, streets, alleys and other public areas under the control or jurisdiction of the County of Fayette * * *"

This franchise then provides that,

"In the event it ever becomes necessary on account of the relocation of re-locating of any highway or public road to remove any poles or other equipment which may have been located on such highway or public road by the Grantee, its successors and assigns, under the right, power and authority hereby granted, the Grantee, its successors and assigns, shall, when so instructed in writing by the County Commissioners' Court of Fayette County, Texas, or the duly authorized County Engineer, move such poles or other equipment to such new location along the relocated and re-routed highway or public road as may be designated by the County Commissioners' Court of Fayette County, Texas."

The franchise to the cooperative is likewise co-extensive with the county limits and grants the right to,

"* * * construct, erect, maintain and operate electric transmission and distribution lines, and all necessary and usual attachments and appurtenances along, across, over and under and on the streets, lanes, highways, public roads, bridges and other public places in this County* * *"

with the proviso that,

"* * * the court reserves the right to permit
the Commissioner of each precinct to direct the
places where said poles shall be set in his re-
spective precinct, and should said road ever be
widened or for any other reason it shall become
necessary to remove said poles, same shall be done
within thirty days after written notice.  Said mov-
ing shall be done at the expense of Fayette Electric
cooperative and reset in such manner as to be as
little in the way of the said road as practical."

Our first concern is the validity of these franchises
with respect to the right-of-way along, over or across designat-
ed state highways.  It is our view that the court is lacking in
such authority.

As has been repeated so many times the powers of the
commissioners' court are limited to those expressly granted by
Constitution or statute, or arising therefrom by necessary impli-
cation.  Commissioners' Court v. Wallace, 15 S.W. (2d) 533.
As an administrative agency of the state it is a court of dele-
gated powers.  Edwards County v. Jennings, 33 S.W. 535.  This is
important to our present inquiry.

If the commissioners' court ever had general jurisdic-
tion and control over state highways as distinguished from
county roads, that general jurisdiction was withdrawn from the
court by an Act of the 38th Legislature (Acts 1923, p. 75, et
seq.) creating a State Highway Commission and investing it with
the authority to take over and maintain "the various State
Highways in Texas."  Robins v. Limestone County (C.C.A.) 258 S.W.
915; Cunningham v. Koons (CCA) 33 S.W. (2d) 781; Hall v. Wil-
barger Co. (C.C.A.) 37 S.W. (2d) 1041, affirmed (Com. of App.),
55 S.W. (2d) 797; Nairn v. Bean, 121 Tex. 355, 48 S.W. (2d) 534;
Alexander v. Singleton (C.C.A.) 50 S.W. (2d) 893; State Highway
Commission v. Dallas County (C.C.A.) 110 S.W. (2d) 255.  See also
Article 6673, Vernon's Annotated Civil Statutes, and annotations
thereunder.

Certainly since 1923 and perhaps even before the com-
missioners' court has been without authority or control over
designated state highways.  It follows that the commissioners'
court of Fayette County had no authority to grant a franchise
for the permissive user of the right-of-way of a designated
state highway for the placing of electric poles and wire thereon.

Honorable John C. Marburger, page 4

While the decision 's from a foreign jurisdiction, the opinion of the Supreme Court of North Dakota in Morton County v. Hughes Electric Company, 53 N.D. 742, 208 N.W. 108, is peculiarly expressive of the power of a Texas commissioners' court. There in discussing a similar situation the court said:

"There is, in our opinion, no question but that the highway in controversy is a 'state highway' within the meaning of the term as defined in Chapter 141, Laws 1919. The bridge and approaches thereto were what is commonly denominated a federal aid project, constructed under the direction and supervision of the state highway commission. * * *

"We are entirely satisfied that the highway in controversy falls within the province of Section 2, Chapter 141, Laws 1919, and is within the control and supervision of the State Highway Commission to the extent and for the purposes prescribed by that statute. It necessarily follows, therefore, that such highway is not one 'under the care and supervision' of the board of county commissioners' of Morton County and that that board has no power to grant a right of way for an electric power transmission line over or along said highway under Sec. 5441 C. L. 1913 as amended by Chapter 183, Laws 1925.

"The state has control over its highways, and a county has no power to grant right of way privileges over or upon them to public service corporations, unless such power has been delegated to it by the Legislature (13 Ruling Case Law, pp. 171, 172), and so far as we can ascertain the Legislature has not delegated to the board of county commissioners the power to grant such right of way upon state highways. It does not follow, however, that the state highway commission has power to grant such right of way. The state highway Commission is a governmental agency of the state, and possesses such powers, and such powers only, as are conferred upon it by law."

This position is not without support in Texas. In El Paso Electric Company v. Leeper (C.C.A. 1931) 42 S.W. (2d) 983, reversed on other grounds, 60 S.W. (2d) 187, the court held that a commissioners' court is without authority to give an electric company the right to obstruct a road by erecting a power pole within the right of way. Cf. Acme Cement Plaster Co. v. American Cement Plaster Co. (C.C.A. 1914) 167 S.W. 183; Houston Lighting

Honorable John C. Marburger, page 5

and Power Company v. Fleming (C.C.A. 1939) 128 S.W. (2d) 487; Boone v. Clark (C.C.A. 1920) 214 S.W. 607, writ ref.

Likewise, this department has previously passed upon the identical question. In Opinion No. 0-1808 we held that the commissioners' court had no authority to grant a franchise to the Central Power and Light Company for the County of Brewster. To the same effect is Opinion No. 0-2274 regarding Polk County. Furthermore, applying the same rule under slightly different circumstances we held in opinion No. 0-2442 that the power to grant a franchise right to a telephone company is non-existent in a commissioners' court.

The result follows that the franchise right the commissioners' court attempted to grant to each utility is non-existent insofar as the right-of-way along a designated state highway is concerned. The franchises therefore cannot be our guide. If the right of either the general company or the cooperative to maintain "X" poles along the right-of-way of a designated state highway is to be sustained we must look elsewhere.

Prior to the enactment of Article 1436 in 1911, the court held in the case of Jacksonville Ice and Electric Company v. Moses (C.C.A. 1911) 134 S.W. 379, that the maintenance of electric poles and wires across a highway without proper authorization is a nuisance and an unlawful obstruction. The court said:

"The testimony indicated that the street or road into which the wire had fallen was outside of the corporate limits of the town of Jacksonville, but that it was a public highway. It was also shown that appellant's wires had been strung across the road without authority having been obtained for that purpose from anyone. If this is true, then the appellant was maintaining a nuisance and was responsible absolutely, and without reference to negligence, for whatever injuries were caused by the maintenance of such an obstruction. (citing cases) The placing of poles and wires upon a public highway for the purpose of furnishing light to private persons is not one of the uses for which highways are established and the right to do so must be acquired from the proper authorities. Freund on Pol. Pow. § 358. See cases last cited. The public have a right to a free and unobstructed use of the highways of the country. We know of no better illustration of the damages likely to result from hanging wires over public roads than that which is

furnished by the facts of this case. That such
a menace is in law an obstruction can hardly be
questioned."

Cf. Sante Fe' Town-Site Co. v. Norvell (C.C.A. 1918)
207 S.W. 960. This is the general rule. McQuillan on Muni-
cipal Corporations (2d Ed.) § 1745, note 49 Vol. 4, pp. 643,
644; 25 Am. Jur. 581 and authorities cited.

Shortly thereafter Art. 1436 of the Revised Civil
Statutes was enacted. This article provides:

"Such corporation shall have the right and pow-
er to enter upon, condemn and appropriate the lands,
right-of-way, easements and property of any person
or corporation, and shall have the right to erect
its lines over and across any public road, railroad,
railroad right-of-way, interurban railroad, street
(railroad, canal or stream in this State, any street
or alley) of any incorporated city or town in this
State with the consent and under the direction of
the governing body of such city or town. Such lines
shall be constructed upon suitable poles in the
most approved manner and maintained at a height a-
bove the ground of at least twenty-two feet; or
pipes may be placed under the ground, as the ex-
igencies of the case may require."

It should be noted that this article authorizes the
erection of lines and poles over and across and not "along"
public roads. This point was raised but found not necessary
for decision in the case of Kelley v. Texas Utilities Co.
(C.C.A.) 115 S.W. (2d) 1233, writ dismissed. We call this
to your attention, but likewise find it unnecessary for our
opinion. We shall treat the general company as rightfully
"along" the public right-of-way.

The cooperative presents a different problem. As
stated, we assume that this company is incorporated under the
provisions of Article 1528b of the R.C.S. (Vernon's). Among
other powers such companies may:

"* * * acquire, own, hold, use, exercise, * * *
franchises, rights, privileges, licenses, rights of
way, and easements necessary, useful or appropriate."

Honorable John C. Marburger, page 7


Nowhere in the act are such companies given the broad powers provided general companies under Article 1538. Were it not for Section 36 of the Act we should read in the powers enumerated in Article 1538 as additional powers, but Section 36 provides that:

> "This Act is complete in itself and shall be controlling. The provisions of any other law of this State, except as provided in this Act, shall not apply to a corporation organized, or in process-of-organization, under this Act."

Consequently, the case for the cooperative company is not as strong as the case for the general company. If the county should prevail over the latter, certainly it should over the former. We shall look upon the rights of either company to maintain wires and poles "along" the right of way of a designated state highway as doubtful, but shall proceed upon the theory that both are rightfully there.

The question insofar as "A" poles are concerned has thus narrowed to this, Upon whom rests the legal duty to remove electric power poles upon the right-of-way of a designated state highway there by virtue of a permissive user or franchise from the Legislature? Is that duty incumbent upon a county commissioners' court when it acts as the agent of the State pursuant to Art. 6674n of Vernon's Annotated Civil Statutes, or, on the contrary does the duty lie with the utility to remove the poles at its own expense when the State desires to widen or relocate one of its highways?

Looking at the problem even in its most favorable aspect with respect to the utility companies, still such companies would seem to have the burden to remove. The placing of electric poles and wires upon a highway right-of-way is a special and exceptional use of the highway. It is not one of the uses for which highways are established. Jacksonville Ice and Electric Co. v. Moses, supra. The right to place electric poles there must spring from the sovereign -- directly or otherwise by Legislative grant. When the utility has accepted the sovereign's benevolence by placing poles upon the highway and thereby completed the franchise, it does so upon certain conditions implied in the franchise. One of these is that the poles shall be placed upon the highway in such manner as to cause the least burden to the greater and primary rights of the traveling public. Another is, that when the use shall interfere with another public use to which the state may see fit to devote the way the utility shall remove the structures to conform to the new way.

Honorable John C. Harburger, page 8

The rule is stated in 10 R.C.L. at p. 76 and 18
Am. Jur. at p. 732 as follows:

"The franchise to lay and maintain rails,
pipes and wires and other structures in a public
highway, although a mere permission to share in
the public use of the way, like other franchises,
is a contract which cannot be arbitrarily res-
cinded, unless the power to alter, amend or re-
peal the franchise has been expressly reserved.
Such a franchise is however granted upon an im-
plied condition that the structures laid by virtue
of its authority shall not at any time interfere
with any other public use to which the state may
see fit to devote the way, and consequently the
corporation maintaining such structures is not entit-
led to compensation when the disturbance or removal
of the structures or an alteration of their loca-
tion is made necessary by a change in the grade of
the highway, or by the introduction therein of
structures of some other character, or the devotion
of the way to some other public use." (Under-
scoring ours)

These statements are supported by a number of decis-
ions, the more outstanding of which are:  New Orleans Gas Light
Company v. Drainage Commission of New Orleans, 197 U.S. 453, 25
Sup. Ct. 471, 49 L. Ed. 831; Anderson v. Fuller, 51 Fla. 380,
41 So. 684, 6 L.R.A. (N.S.) 1028; Columbus Gas Light and Coke Co.
v. City of Columbus, 50 Ohio St. 65, 33 N.E. 295, 40 Am. St. Rep.
848, 19 L.R.A. 510; Scranton Gas and Water Company v. Scranton,
214 Pa. 586, 64 Atlantic 84; County Court of Wyoming County v.
White, 79 W. Va. 475, 91 S.E. 350, L.R.A. 1917D, 340; Annotation,
L.R.A. 1917D, 353; Dakota Cent. Telephone Co. v. Shipman Construc-
tion Co. 49 S. Dak. 651, 207 N.W. 72; Grenger Telephone and Tel-
egraph Co. v. Sloane Bros., Inc., 96 Wash. 333, 155 P. 102.

In New Orleans Gas Light Company v. Drainage Com. of
New Orleans, supra, the U. S. Supreme Court held that the City
of New Orleans could require the gas light company to remove
at its expense pipes located beneath the city streets placed
there pursuant to a franchise from the state when the city found
it necessary to reconstruct a street.  The court stated that
the injury sustained was damnum absque injuria.

Speaking through Mr. Justice Day the Court said:

Honorable John C. Marburger, page 9

> "The gas company did not acquire any specific location in the streets; it was content with the general right to use them; and when it located its pipes it was at the risk that they might be, at some future time, disturbed, when the state might require for a necessary public use that changes in location be made."

Upon a similar problem arising before the Supreme Court of Florida in 1906 (Anderson v. Fuller, supra) the Court said:

> "The City of Tampa was, therefore, not authorized to burden itself with the cost of removing and replacing of the water pipes, gas pipes, telegraph, telephone and electric light poles, drains, or conduits or railway tracks that might necessarily have been interfered with in laying sewers in the streets."

In Scranton Gas and Water Company v. Scranton (Pa. Sup. 1906) 214 Pa. 593, 64 Atl. 84, the court said:

> "It is the reasonable discretion of the municipal authorities that determines the extent of changes in the streets required to meet public necessities; and to this change, whatever it may be, short of an abrogation or annullment of the company's right to maintain its system of pipes in the public streets, the company must conform at its own cost and expense." (Underscoring ours)

In County Court of Wyoming County v. White, 79 W. Va. 475, 91 S.E. 350, L.R.A. 1917D, 660, the county commissioners were engaged in widening and improving the highways and had demanded the removal of certain telephone poles. The court stated the problem and solution as follows:

> "One question presented is, Upon whom rests the legal duty to remove the telephone poles and wires? Relator is a municipal corporation, a governmental agency, entrusted with the duty of locating, building, and maintaining the public highways of the county.

Honorable John C. Marburger, page 10

> Respondents, owners of the telephone lines,
> are engaged in the public service and are oc-
> cupying a portion of the public right-of-way
> with their lines, by virtue of a frenchise
> granted pursuant to legislative authority
> by the county court to their predecessors in
> title. The right of the public in the highway
> for the purpose of travel in the ordinary modes
> is a primary and fundamental right, and is not lim-
> ited to that portion only of the right-of-way here-
> tofore traveled. Respondents have a permissive
> and subordinate right only, which exists only so
> long as it does not interfere with the primary
> and superior right of the traveling public. Such
> primary right to occupy any and all parts of the
> right-of-way for the purpose of a roadway necessar-
> ily implies the right to widen and improve the traveled
> portion of the road, whenever it becomes necessary
> for the better accomodation of the public. This
> principle was not controverted in the argument.
> But it was contended that the poles did not inter-
> fere with travel in the roadway, and that, being in
> the way only of the work of improving the highway,
> it was therefore the duty either of the county court
> or of their contractors to remove them in a careful
> manner, at their own expense. This is certainly not
> the law."

See also annotation L.R.A. 1917D, p. 563, et seq.

This decision was noted with approval in Dakota Cen-
tral Telephone Company v. Shipman Construction Co. (S.D. 1928)
supra. Here the court noted that the last case relied to some
extent upon a statute requiring removal, but held that the
statute was merely declaratory of the common law.

We believe that this also is the rule in Texas.
In Houston and Texas Central Railway Co. v. City of Dallas,
98 Tex. 396, 84 S.W. 643, 70 L.R.A. 850, our Supreme Court
held in a somewhat analogous situation that the City of Dallas
might properly require the railroad in question to remodel its
tracks and facilities and the grading thereof et points inter-
secting city streets so as to conform to the grade of such
streets. Speaking of this power in the City, the Court said:

Honorable John C. Marburger, page 11

"It is merely the exercise of the power subject to which all persons use the public highways for their own purposes to so regulate such uses to secure the rights therein of the people generally, and protect them in the safe and convenient enjoyment thereof. The power exists at all times in the legislature and in those inferior governmental bodies to whom it may be properly committed, and its proper exercise as unrestricted by the mere previous existence of property rights.

"* * * In this case, the streets are already established -- properly, we must assume -- across the railroad, and there is no effort to apply the power of eminent domain. The existing crossings, as the city contends, are so dangerous to life and so inconvenient to travel as to require that the proposed changes be made."

At another point the court said:

"That compensation is not required to be made for such loss as is occasioned by the proper exercise of the police power has already been stated. It is equally true that the infliction of such loss is not a taking without due process of law. The exertion of the police power upon subjects lying within its scope, in a proper and lawful manner, is due process of law."

For an additional reason the Commissioners' Court may require the removal of the "A" poles in question. Article 784 of the Penal Code prohibits the obstruction of a public highway. As pointed out in the Jacksonville case, supra, the erection of power poles along a public highway in such a way as to incommode the public is a menace and an obstruction. Article 788 of the penal code enjoins upon the commissioners' court the duty of regulating and providing for the removal of such obstructions.

For the reasons given and under the authorities cited it is the opinion of this department and you are advised that the Commissioners' Court of Fayette County, Texas, may require the general company and the electric cooperative to remove from the right-of-way of a designated state highway at their expense

Honorable John C. Marburger, page 12

electric power poles and lines placed there by them when such removal becomes necessary by reason of the widening and relocation of the highway in question.

This is not the case with respect to the "B" poles. We have pointed out that the transmission lines and poles which we have designated "B" poles are now lawfully on and across private property by virtue of easements granted the respective power companies by private land owners. That these easements are property rights which can not be appropriated for the public use without compensation is well established. Section 17, Art. 1, Constitution of Texas; City of Fort Worth v. Southwestern Bell Telephone Company, 80 Fed.(2d) 972, re-hearing denied, 81 Fed. (2d) 1016.

This rule has also been handed down by the Supreme Court of the United States. In Panhandle Eastern Pipe Line Company v. the State Highway Commission of Kansas, 294 U.S. 313, 55 S. Ct. 563, 79 L.Ed. 1090, the facts were that the pipeline company's lines were all located on its own right-of-way, secured from landowners, and none of the lines were located along, on or across any previously existing state highway. The Highway Commission, desiring to widen and relocate the highway in question, acquired rights-of-way for highway improvement from fee landowners but did not obtain the consent of the pipeline company to cross or occupy its right-of-way.

The highway improvement necessitated certain changes in the pipeline company lines. In some instances it was necessary that the pipeline be lowered and encased. In other instances it was necessary that the pipeline and telephone line be removed to the outer edge of the right-of-way newly acquired by the Highway Commission. However, none of the changes would have required the pipeline company to acquire any new or additional rights-of-way. The Court, speaking through Mr. Justice McReynolds, held that notwithstanding the terms of a statute giving the Highway Commission the right to require the removal of the pipelines at the expense of the pipeline company, the State could constitutionally exercise no such power. It held that,

"If carried into effect, the challenged order of the commission would result in taking private property for public use."

Honorable John C. Marburger, page 13

The court emphasized that a private right-of-way is an easement and is land that cannot be taken for public use without compensation.

We have heretofore held in accordance with the rule thus established by the Supreme Court of the United States. In Opinion No. 0-2274 we stated that,

"The plat showing the location of the right-of-way for the old highway, the right-of-way for the power line and the right of way of the new highway, shows that the power line did not cross or go over the original h'ghway, but when the new highway was constructed the right-of-way for the same crossed the right-of-way of the power line or utility company, necessitating the removal of a few poles of the power line along the sides of the new highway, also the utility company was required to use higher poles in crossing the highway and erect certain guy lines in making the above mentioned changes. However, the utility company was not required to secure any additional right-of-way for the above mentioned purposes.

"In view of the foregoing authorities, you are respectfully advised that it is the opinion of this department that the county is liable to the Gulf States Utility Company for all reasonable expenses necessarily incurred by said company for the purposes aforesaid."

Consequently, it is the opinion of this department and you are advised that insofar as "3" wires and poles are concerned, now lawfully on and across private lands by virtue of easements from the land owners, Fayette County will be liable to the utilities in question for the cost of removing and relocating such poles and wires and may not in proceeding under Article 6374a to acquire new rights-of-way for a wider and relocated highway remove or damage such structures without by purchase or condemnation paying just compensation to the utilities, owners of the easements.

APPROVED JAN 30, 1942                    Very truly yours

FIRST ASSISTANT                          ATTORNEY GENERAL OF TEXAS
ATTORNEY GENERAL

                                    By
                                         James D. Smullen
JDS:js                                   Assistant

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN